**SESOSTRIS, S.A.E., Plaintiff,**

v.

**TRANSPORTES NAVALES, S.A., in personam, and M/V UNAMUNO, her engines, appurtenances, boilers, tackle, in rem, Defendants.**

Civ. A. No. 88–1503–C.

United States District Court,
D. Massachusetts.

Dec. 28, 1989.

Thomas J. Walsh, Jr., James F. Ring, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

Thomas J. Muzyka, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on a variety of motions by the plaintiff and a third party to this action. The plaintiff Sesostris, S.A.E. ("Sesostris") has moved to confirm a foreign arbitration award, moved for judgment, and moved for payment of funds deposited in the registry of the Court. The defendant Transportes Navales, S.A. ("Transportes") has not appeared in this Court and has filed no papers regarding any of the motions before the Court. The defendant M/V UNAMUNO ("Unamuno") is a cargo ship once owned by Transportes and now operated and owned by Banco de Credito Industrial, S.A. ("BCI"). As a third party, BCI has appeared in this action, filed an answer, and asserted a counterclaim against Sesostris. BCI has also opposed plaintiff's motions, has moved to dismiss the complaint in this action, and has moved for return of its funds deposited with the Court. In response, Sesostris has moved to strike BCI's answer and counterclaim. The relevant facts concerning these motions are as follows.

At its core, this case is an admiralty action for breach of two charter parties. Transportes, a Spanish entity, was the owner of two dry-bulk cargo ships, the Unamuno and the M/V BAROJA. In 1987, Sesostris chartered the ships under two charter party agreements. Each charter party provided that if the Spanish government were to pay Transportes subsidies for cargo carried under the charter parties, then Sesostris and Transportes would share the subsidies equally. Sesostris alleges that it never received its share of the subsidies amounting to about $72,000.

On June 27, 1988, pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"), Sesostris successfully arrested and attached the Unamuno as it was docked in Boston. Sesostris also filed a complaint naming defendants Transportes, *in personam*, and the Unamuno, *in rem*. On July 1, 1988, BCI appeared before this Court seeking to release the Unamuno. BCI claimed to be a mortgagee in possession of the Unamuno. After some negotiation, the parties reached an agreement for releasing the Unamuno.

Pursuant to a stipulation by the parties, BCI filed a motion to release the Unamuno after the posting of substitute security. BCI agreed to deposit $100,000 with the Court to serve as security for the claims of Sesostris against Transportes and the Unamuno. The parties agreed that any final

judgment in favor of Sesostris would be paid from the $100,000 and any remaining amount would be returned to BCI. This Court granted the motion "in reliance upon the stipulation" and pursuant to Supplemental Rule E(5).

Subsequently, Sesostris and BCI filed several additional motions. On July 15, 1988, BCI filed a claim requesting to appear and a motion for extended time to file responsive pleadings, which the Court allowed. On July 28, 1988, Sesostris requested that the Court enter default judgment against Transportes, *in personam,* and the Unamuno, *in rem,* for failure to appear. On July 29, 1988, BCI answered Sesostris's complaint, filed a counterclaim, and moved to stay the proceedings pending arbitration. On August 5, 1988, the Court allowed Sesostris's motion for entry of default against Transportes and the Unamuno, but then vacated that order with respect to the Unamuno on August 11, 1988. On August 18, 1988, Sesostris moved to strike BCI's answer and claim with respect to the Unamuno. Finally, on August 25, 1988, this Court allowed BCI's motion to stay the proceedings pending foreign arbitration under the charter parties.[1]

The communication between Sesostris and BCI concerning the foreign arbitration was minimal. From August 25, 1988 until early December 1988, the parties exchanged no correspondence concerning the arbitration proceedings. On December 5, 1988, BCI sent a letter to Sesostris requesting "notice as to when and where arbitration proceedings" would be held.[2] From December 1988 until March 1989, BCI re-

ceived no response from Sesostris. On March 15, 1989, BCI received a letter from Sesostris stating only that the arbitration proceedings "are presently being pursued in Madrid, Spain."[3] On March 30, 1989, BCI wrote to Sesostris again requesting: "[p]lease provide us with details as to when and where the arbitration proceeding is alleged to proceed." Finally, on April 19, 1989, Sesostris responded to BCI that the arbitration proceedings had been concluded.

From papers filed with this Court, it appears the arbitration proceedings were conducted some time between March 13 and March 17, 1989. Two Spanish attorneys, one representing Sesostris and one representing Transportes, signed a settlement agreement on March 13, 1989 stipulating to various facts and procedures for the arbitration. Among other things, the two attorneys stipulated that Transportes had not paid Sesostris its share of the subsidies because Transportes was forced to turn over possession of its ships to BCI. Further, the parties stipulated that Transportes was still the owner of the Unamuno when arrested on July 27, 1988. Based solely on stipulated facts, an arbitration panel of three Spanish citizens issued an award in favor of Sesostris for half of the subsidies. The arbitration panel ruled that this award was enforceable against Transportes and its ship the Unamuno. The arbitrators signed their decision on March 17, 1989.

On May 1, 1989, Sesostris filed motions in this Court to confirm the arbitration

---

1. The two charter parties at issue in this case both include arbitration clauses. Paragraph 17 of each charter party states:

   That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at Madrid, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

2. The complete text of the December letter reads as follows:

   In accordance with the court's order staying the Federal Court proceedings pending arbitration, we would appreciate receiving notice as to when and where the arbitration proceedings are pursued by your client.
   The letter was addressed to counsel for Sesostris and signed by counsel for BCI.

3. The complete text of the March letter reads as follows:

   With regard to your inquiry as to 'when and where arbitration proceedings are pursued by [our] client,' our understanding is that they are presently being pursued in Madrid, Spain.
   The letter was addressed to counsel for BCI and signed by counsel for Sesostris. The letter was dated March 11, 1989.

award, to enter judgment on its behalf, and to receive payment from the funds deposited by BCI with the Court. BCI opposed the motions and filed a motion to dismiss Sesostris's claims asserting foreign sovereign immunity.

At present, there are three sets of motions pending before the Court. First, Sesostris's motions to strike the answer and counterclaim by BCI as untimely. Second, Sesostris's motions to confirm the foreign arbitration award, enter judgment, and for payment from funds deposited with the Court. Third, BCI's motions to dismiss the complaint asserting foreign sovereign immunity and for return of funds deposited with the Court. Each set of motions shall be discussed in turn.

## I. Sesostris's Motions to Strike BCI's Answer and Counterclaim

■ Sesostris has filed motions to strike BCI's answer and counterclaim arguing that BCI's pleadings failed to conform to the procedural requirements of the Supplemental Rules. In opposition, BCI has responded that this Court has discretion to construe the Supplemental Rules liberally and to accept technically non-conforming pleadings in an admiralty case.

The Supplemental Rules require that:
The claimant of property that is the subject of an action in rem shall file his claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

Supplemental Rule C(6). Recently, the First Circuit Court of Appeals has emphasized that Supplemental Rule C(6) should be applied in light of "old-fashioned common sense and the time-honored admiralty principle that pleadings and procedural practices in maritime actions should be applied liberally." *United States v. One Urban Lot Located at 1 Street A–1*, 885 F.2d

994, 1001 (1st Cir.1989) (court held that verified answer filed within 20 days without a preceding claim filed within 10 days satisfied the time requirements of Supplemental Rule C(6)). The First Circuit stated that:

So that to the greatest extent possible controversies are decided on the merits, a district judge should exercise his discretion to grant additional time for the filing of a claim or treat an answer containing all the elements of a claim as a claim when 'the goals underlying the time restrictions and the verification [of the claim] are not thwarted.'

*One Urban Lot*, 885 F.2d at 1001 (quoting *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir.1985)).

In this case, Sesostris filed the complaint at the time of attachment on June 27, 1988. After discussions with Sesostris, BCI appeared before this Court as mortgagee in possession of the Unamuno on July 1, 1988, and, by an agreement with Sesostris, BCI tendered substitute security for Sesostris's claims pursuant to Supplemental Rule E(5)(c). On July 15, 1988, BCI filed an unverified claim, and a motion to extend time to file responsive pleading for two weeks. The Court granted BCI's motion, and, on July 29, 1988, BCI filed an answer and a counterclaim.

Given this procedural background and the applicable law, BCI's answer and counterclaim should stand. Even though the claim was filed more than 10 days after the arrest and attachment, Sesostris clearly knew of BCI's claim, had direct discussions with BCI over release of the Unamuno, and, according to BCI, had initially agreed to extend time for BCI to file responsive pleadings. Furthermore, pursuant to Supplemental Rule C(6), this Court expressly granted BCI additional time to file responsive pleadings. As to the claim being unverified, the claim clearly identified BCI, stated its interest as mortgagee in possession of the Unamuno, and requested an appearance in this action. This information satisfies the substantive requirements of Supplemental Rule C(6), and, although unverified, the claim presents no prejudice to

Sesostris which knew of BCI's claim several weeks earlier upon negotiating for substitute security. In light of these facts and the First Circuit's recent decision in *One Urban Lot*, this Court should deny Sesostris's motions to strike the answer and counterclaim by BCI.

## II. *Sesostris's Motions to Confirm Foreign Arbitration Award*

■ Sesostris has moved to have the arbitral award signed on March 17, 1989 in Madrid, Spain confirmed by this Court. BCI has opposed Sesostris's motion by presenting evidence that it received no notice of the arbitration proceedings. In response, Sesostris argues that BCI was not a proper party to the arbitration proceedings and consequently should not have received notice of the arbitration.

This Court has jurisdiction and authority to enforce foreign arbitration awards pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). 9 U.S.C. §§ 201–208. The Convention applies to any "arbitration agreement or arbitral award arising out of a legal relationship ... which is considered as commercial." 9 U.S.C. § 202. *See also Atlas Chartering Services, Inc. v. World Trade Group, Inc.*, 453 F.Supp. 861, 863 (S.D.N.Y.1978). The Convention also covers written arbitration provisions in any maritime transaction. 9 U.S.C. §§ 2, 202. Within three years of the arbitrator's decision, "any party to the arbitration may apply to any court having jurisdiction ... for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. This Court "shall confirm the award unless it finds one of the grounds for refusal or deferral

of recognition or enforcement of the award specified in the Convention." *Id.*

Under the Convention, an arbitral award may be refused for failure to provide adequate notice of the foreign proceedings. Convention, art. V. Specifically, article V states in pertinent part:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that: ... The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case....

Convention, art. V, subd. 1(b). Under this provision, "the party against whom [the award] is invoked" has standing to object to the confirmation of the award. *Id.* Further, the objecting party has the burden to show the lack of proper notice of the arbitration proceedings. *Id.* In view of the Convention and its enabling law, this court should deny Sesostris's motions to confirm the arbitral award.

■ First, this Court should recognize that BCI is a party to this action. This Court has repeatedly treated BCI as an entity asserting an interest relating to the *in rem* defendant, the Unamuno.[4] Furthermore, in granting the stay pending arbitration, this Court recognized that BCI, as the movant, was a party to this action.[5] Finally, as the Federal Rules of Civil Procedure apply in admiralty actions, BCI would be an interested party such that it could intervene as a matter of right in this action. *See* Supplemental Rule A; Fed.R.

---

4. On July 1, 1988, pursuant to Supplemental Rule E(5)(c), this Court accepted BCI's stipulation and motion to release the Unamuno upon the posting of substitute security. On July 15, 1988, pursuant to Supplemental Rule C(6), this Court allowed BCI's motion for extended time to file a responsive pleading. Finally, on August 11, 1988, this Court refused to enter a default judgment against the Unamuno *in rem* recognizing BCI's appearance.

5. Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1–15, grants a district court authority to stay the proceedings only "on application of one of the parties." 9 U.S.C. § 3. When this Court granted BCI's motion, Transportes had defaulted in this action and could not be considered the party moving for the stay. Furthermore, in its motion papers, BCI clearly referred to itself as a defendant and as a party asserting a counterclaim. In granting this motion for stay, this Court recognized BCI's interest as a party in this action.

Civ.P. 24(a)(2).[6] For all these reasons, BCI should be considered a party to the *in rem* action against the Unamuno.

Second, given the early proceedings in this case, BCI is clearly the party against whom the arbitral award is being invoked. BCI first appeared in this action as a third party claiming the interest of a mortgagee in possession to an arrested ship, the Unamuno. BCI has maintained possession of the Unamuno ever since its release and has claimed ownership of the Unamuno by order of a Spanish court prior to the ship's arrest. Furthermore, BCI tendered $100,-000 to this Court as substitute security for Sesostris's claims, and Sesostris now seeks to satisfy its claims from the security deposited by BCI. Given these facts, BCI is clearly the party against whom Sesostris seeks to enforce the arbitral award.

Third, given the record of correspondence between the parties, BCI did not receive proper notice of the arbitration proceedings. At BCI's request, this Court stayed the proceedings on August 25, 1988. Sesostris clearly knew that BCI had moved for the stay, and BCI had deposited the security for Sesostris's claims in this case. For three months, however, no correspondence was exchanged between BCI and Sesostris. On December 5, 1988, BCI requested "notice of when and where the proceedings" would be held. This letter, however, initiated no communication by Sesostris as to any of its plans for the arbitration. Not until three months later did Sesostris even respond to BCI's request for notice. On March 11, 1989, Sesostris wrote to BCI stating ambiguously that "it is our understanding that arbitration proceedings are presently being pursued in Madrid, Spain." This reply did not state that the procedures for the arbitration were currently being negotiated, as later evidence made clear. Nor did the reply disclose that some counsel for Transportes had appeared or been retained in Spain, and this counsel would represent the interests of Transportes and the Unamuno at the proceedings. Nor did the reply contain any reference to the current scheduling of the proceedings which were to begin within the week, as later evidence made clear. This March 11 letter was not received until March 15 after Sesostris and Transportes had agreed to stipulated facts for the arbitration. The arbitrators signed their decision on March 17, 1989. After requesting further details, BCI was informed in mid-April that the arbitration was complete. Given this undisputed record of correspondence, BCI clearly had no proper notice of the arbitration proceedings.[7]

In sum, BCI is the party against whom the award is being invoked, and BCI re-

---

**6.** Rule A of the Supplemental Rules states in pertinent part: "[t]he general Rules of Civil Procedure for the United States District Courts are also applicable to the foregoing proceedings except to the extent they are inconsistent with these Supplemental Rules." Federal Rule of Civil Procedure 24 states, in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).

In this case, BCI appeared as the mortgagee in possession of the Unamuno and clearly claimed "an interest relating to the property ... which is the subject of the action." Furthermore, as the Unamuno was arrested and attached, BCI's ability to protect its interest in the Unamuno would be seriously impaired if BCI were not allowed to appear as a party. Finally, the *in personam* defendant Transportes has not appeared in this case and cannot represent BCI's interests. Consequently, BCI should be permitted to intervene in this action.

**7.** In its papers, Sesostris argued that BCI did not sign the charter parties at issue in this case, was consequently not a proper party to the arbitration, and therefore did not need to receive any notice. This claim, however, does not address the clear language of the Convention which requires notice to "[t]he party against whom the award is invoked." Convention, art. V, subd. 1(b). As noted above, Sesostris clearly knew BCI had appeared in this case claiming ownership of the Unamuno and had deposited substitute security for Sesostris's claims. Furthermore, BCI was the party which moved for stay of the proceedings pending arbitration. Consequently, Sesostris cannot claim BCI was not entitled at least to notice under the plain language of the Convention.

ceived no notice of the arbitration proceedings until after the proceedings were complete. Consequently, BCI has proved grounds for refusal of the award under the Convention, and Sesostris's motions to confirm the award, enter judgment, and withdraw funds from the funds deposited with the Court should be denied.

### III. BCI's Motion to Dismiss Asserting Foreign Sovereign Immunity

■ BCI has moved to dismiss Sesostris's complaint arguing that it was the true owner of the Unamuno at the time of arrest and that this Court cannot take action against BCI as a Spanish government entity. Sesostris opposes this motion claiming that BCI was not the registered owner of the Unamuno and that, even if it were, BCI is not a government entity entitled to foreign sovereign immunity protection.

The Foreign Sovereign Immunities Act ("FSIA") grants broad jurisdictional immunity to foreign states subject to certain limitations. See 28 U.S.C. §§ 1602–11.[8] Specifically, FSIA gives foreign states immunity from the pre-judgment arrest or attachment of its property in the United States. See 28 U.S.C. §§ 1609–11. This immunity from arrest or attachment does not apply to property which used for commercial activity and where the commercial activity is the basis for the claim. 28 U.S.C. § 1610(a)(2). FSIA also gives unqualified immunity from arrest or attachment to property "of a foreign central bank or monetary authority." 28 U.S.C. § 1611(b)(1).

BCI alleges that it was the true owner of the Unamuno on the day of its arrest on June 29, 1988. Further, BCI claims that as a wholly-owned subsidary of the Spanish government, it is entitled to jurisdictional immunity from the arrest of the Unamuno. If BCI's factual assertions were accepted without scrutiny, BCI's claims might state a position suitable for dismissing the

claims. See, e.g., Jet Line Services, Inc. v. M/V MARSA EL HARIGA, 462 F.Supp. 1165, 1168–78 (D.Md.1978). Given the record before this Court, however, BCI's claims are not supported with factual evidence sufficient to grant its motion.

First, BCI has provided no authenticated documents showing its ownership interest in the Unamuno. BCI has claimed that a Spanish court ordered the Unamuno into BCI's custody on April 13, 1988. BCI's only support for this claim is the affidavit of a Spanish lawyer who states that "complete control and possession of the vessel was transferred by Order of Court to [BCI]." This same Spanish lawyer, however, states "the vessel became the property of [BCI] on April 27, 1989, date of judicial adjudication in favour of bank." This evidence suggests that "possession and control" may not be the same as "property" or ownership under Spanish law. This Court need not make that determination, however, since none of the Spanish court documents appear before this Court, and the evidence of a Spanish attorney's affidavit does not provide sufficient proof of ownership.

Second, BCI has failed to provide any conclusive evidence that it is the "foreign central bank or central banking authority" of Spain. 28 U.S.C. § 1611(b)(1). BCI's only support for a claim of unqualified immunity under section 1611 is again the affidavit of a Spanish lawyer. The lawyer states: "[BCI] is a state-owned and controlled bank engaged, among others, in the business of providing financing for the construction of vessels." This assertion, however, is not supported by any further documentation. Even if it were, this affidavit does not show that BCI is the central bank or central banking authority of Spain. Rather, it shows that BCI is a subsidiary entity owned by the state. This does not satisfy the plain language of section 1611, and therefore BCI should not be granted

---

**8.** Under FSIA, a foreign state is defined as "a political subdivision of a foreign state or an agency or instrumentality of a foreign state...." 28 U.S.C. § 1603(a). Further, an agency or instrumentality of a foreign state "means any enti-

ty ... which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof...." 28 U.S.C. § 1603(b)(2).

744

unqualified immunity from the arrest or attachment of its property.

Third, even if BCI demonstrated its ownership of the Unamuno and its status as an agency of a foreign state, the property at issue in this case appears to fall within one of the statutory exceptions to immunity. Where the property was "used for commercial activity" and the commercial activity is the basis for the claim, there is no immunity from arrest or attachment. 28 U.S.C. § 1610(a)(2). In this case, the Unamuno was used for the commercial activity described by the charter parties, and this action is based on a breach of the charter parties. Consequently, the Unamuno would not be immune from arrest or attachment under FSIA.

In sum, BCI has not adequately supported its motion asserting foreign sovereign immunity, and therefore BCI's motions to dismiss and for return of funds deposited with the Court should be denied.

Order accordingly.

ORDER

In accordance with the memorandum filed this date, it is ORDERED:

1. Plaintiff's motions to strike answer and counterclaim are denied.

2. Plaintiff's motions to confirm arbitral award, enter judgment on its behalf, and for payment of funds deposited in the Registry of the Court are denied.

3. Motions by Banco de Credito Industrial, S.A., appearing on behalf of the M/V UNAMUNO, *in rem,* to dismiss and for return of funds deposited in the Registry of the Court are denied.