Jenny **RUBIN,** et al., **Plaintiffs–Judgment Creditors,**

v.

The **ISLAMIC REPUBLIC OF IRAN,** et al., **Defendants–Judgment Debtors,**

v.

**Museum of Fine Arts and Harvard University,** et al., **Trustee Process Defendants.**

**Civil Action No. 06–11053–GAO.**

United States District Court, D. Massachusetts.

March 31, 2008.

---

Georgia J. Asimakopoulos, Edward V. Colbert, III, Richard J. Grahn, Looney & Grossman, LLP, Boston, MA, David J. Strachman, McIntyre, Tate, Lynch & Holt, Providence, RI, for Jenny Rubin.

Courtney Amber Clark, Robert J. Muldoon, Jr., Sherin & Lodgen LLP, Boston, MA, Joshua A. Doan, William D. Iverson, Jason M. Knott, Covington & Burling, LLP, Washington, DC, Simon J. Frankel, Covington & Burling, San Francisco, CA, for Museum of Fine Arts.

Mark C. Fleming, Timothy R. Shannon, WilmerHale LLP, Boston, MA, Paul R.Q. Wolfson, Wilmer, Cutler, Pickering, Hale and Dorr LLP, Washington, DC, for Harvard University.

## *ORDER*

O'TOOLE, District Judge.

The plaintiffs, survivors of a terrorist attack by Hamas, sued the Islamic Republic of Iran in the District Court for the District of Columbia alleging that Iran was liable for the attacks because it provided material support to Hamas. The plaintiffs obtained a default judgment which included $71.5 million in compensatory damages and $37.5 million in punitive damages. The plaintiffs registered their judgment with this Court and moved to attach by trustee process certain antiquities alleged to the be property of Iran but actually held in the custody of several museums, including the Museum of Fine Arts and Harvard University (the "trustee process defendants"). The trustee process defendants moved to quash the summonses and dissolve the trustee process attachments, arguing that Iran does not own the antiquities in question and that even if it did, the property would be immune from attachment under the Foreign Sovereign Immunities Act, ("FSIA"), 28 U.S.C. §§ 1609, 1610. The plaintiffs moved for partial

summary judgment, arguing that the trustee process defendants did not have standing to assert Iran's sovereign immunity. The plaintiffs also opposed the trustee process defendants' motion to quash the summonses, arguing that the commercial use exception to immunity under FSIA, *see* § 1610(a) applies to the antiquities, and that in any event the antiquities are subject to attachment and execution under § 201 the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub.L. No. 107–291, 116 Stat. 2322.

In a previous order, I ruled that the trustee-process defendants are able to raise the issue of Iran's immunity under § 1609 of FSIA, and that § 1609, which provides that "the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter," 28 U.S.C. § 1609, applied to the antiquities. *See Rubin v. The Islamic Republic of Iran,* 456 F.Supp.2d 228, 231, 234 (D.Mass.2006) (order denying the plaintiff's motion for partial summary judgment and denying the trustee process defendants' motions to quash). I also ruled that the "commercial use" exception to immunity under FSIA, § 1610, did not apply. *See id.* at 236. However, I ruled that notwithstanding the property's immunity under FSIA, the plaintiffs might still be able to obtain the antiquities under § 201 of TRIA, which provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201.

 The trustee process defendants moved for reconsideration with respect to my ruling that the antiquities qualify as "blocked assets" within the meaning of TRIA § 201 and are therefore subject to attachment by trustee process. After further consideration, I decline to alter my previous ruling, though I take this opportunity to explain it in greater detail.

A "blocked asset" under TRIA is defined as "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act (50 U.S.C.App. § 5(b)) or under sections 202 and 203 of the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. §§ 1701; 1702)." TRIA § 201(d)(2), 116 Stat. at 2339. Pursuant to the IEEPA, all Iranian assets in the United States were frozen in 1979 by Exec. Order No. 12,170. Exec. Order No. 12,170, 44 Fed.Reg. 65729 (Nov. 14, 1979). In 1981 Exec. Order No. 12,281, issued as part of the Algiers Accords, unblocked "all uncontested and non-contingent liabilities and property interests of the Government of Iran, its agencies, instrumentalities, or controlled entities ...." Exec. Order No. 12,281, 46 Fed.Reg. 7923 (Jan. 19, 1981); 31 C.F.R. § 535.333(a).

The regulations implementing Exec. Order 12,281 state that a property interest is "contested," and therefore blocked, "only if the holder thereof reasonably believes that Iran does not have title or has only partial title to the asset ..." and further explain that "such a belief may be considered reasonable only if it is based upon a bona fide opinion, in writing, of an attorney ... stating that Iran does not have title or has

only partial title to the asset." *See* 31 C.F.R. § 535.333(c).

The trustee process defendants argue that even if the antiquities are initially considered "blocked assets" and therefore subject to execution or attachment under § 201 of TRIA, the plaintiffs must still establish Iran's ownership of the antiquities to execute their judgment. This, the trustee process defendants argue, would mean that the ownership of the antiquities would be "uncontested," *see* 31 C.F.R. § 535.333(a), and therefore unblocked and not subject to execution or attachment under § 201 of TRIA. I adhere to my previous rejection of this argument.

The current controversy is possible because Exec. Order 12,281 and its regulations do not address the possibility of the levy remedy later authorized by the enactment of TRIA. The executive order and regulations unblocked property of Iran previously frozen in the United States if there was no dispute that the property was Iran's, but kept blocked any property claimed by another party (or parties), pending resolution of the claim(s).[1] So, if Iran demanded that the Museum of Fine Arts return some Persian antiquity, the status of that object as "blocked" or "unblocked" would turn on whether the Museum conceded Iran's ownership (unblocked) or contested it (blocked).

TRIA inserted a third party's interest into the picture by authorizing a judgment creditor to pursue a terrorist party's "blocked" assets. This context raises questions that are not answered by the executive order and regulations. The questions must be answered by finding the most reasonable accommodation between the objectives of the executive order and regulations, on the one hand, and TRIA's judgment creditor remedy, on the other.

In Iran's case, blocked assets are equivalent to assets as to which there is a contest of ownership. In the binary case envisioned by the executive order and regulations, the contest would arise when both Iran and the holder asserted ownership of the property at issue. The competing claims would keep the assets blocked until the contest was adjudicated, at which time it would be determined whether the property belonged to Iran and should be returned, or whether it belonged to the claimant, who could retain its possession. In this simple case, the trustee process defendants' description of what happens is unexceptionable: property adjudicated to be Iran's may be said (at that point) to be uncontestedly Iran's and thus unblocked and thus returnable to Iran.

 TRIA, however, envisions the possibility that property of Iran held in the United States might not be returned to Iran even where it might be adjudicated that, as between the holder and Iran alone, Iran has the superior claim. Under TRIA, a person holding a judgment against Iran based on a claim of an act of terrorism may be entitled to the property in satisfaction of that judgment, notwithstanding the absence of any contest between the actual holder and Iran. To conclude otherwise

---

1. Under the applicable regulations, the holder of "uncontested and non-contingent ... property interests of the Government of Iran ...," 31 C.F.R. § 535.333(a), is "licensed, authorized, directed and compelled to transfer such properties ... as directed ... by the Government of Iran...." 31 C.F.R. § 535.215(a). When Iran demands the transfer of an asset to Iran, the holder is faced with two choices: either return the property to Iran or retain it as "contested" if "the holder ... reasonably believes that Iran does not have title or has only partial title to the asset." *See* 31 C.F.R. § 535.333(c). If the holder has such a reasonable belief, which also requires the support of a written opinion of an attorney, *id.,* the regulations permit the holder to retain the property, at least until its ownership is adjudicated at some later point, for example in the Iran–U.S. Claims Tribunal.

would be to negate TRIA's remedy as to judgment creditors of Iran. TRIA permits judgment creditors to levy on blocked assets. With respect to Iran, blocked assets are by definition contested assets. Obviously, in order to succeed in the levy, the judgment creditor would have to establish that the property may be taken on execution because it belongs to the judgment debtor. The trustee process defendants' position is that as soon as the levying creditor succeeds in establishing the property is eligible for execution under TRIA, it ceases to be eligible. Because that construction is so at odds with what Congress evidently intended in providing TRIA's remedy to persons such as the plaintiffs, it cannot be accepted as a reasonable harmonization of whatever gap there is between TRIA and Exec. Order 12,281 and it regulations.

The next question is whether there is a qualifying "contest" sufficient to make the antiquities at issue here "blocked" under the regulations. The trustee process defendants deny the antiquities belong to Iran, but they also say that because Iran has never claimed them, there is no contest. Iran doesn't want them; the plaintiffs do. The trustee process defendants argue that the plaintiffs' claim that the properties belong to Iran is not enough to make their ownership "contested." I disagree. A creditor's assertion that property held by a putative trustee belongs to the debtor and may be taken by the creditor for application against the debt is fundamental to trustee process under Mass. Gen. Laws ch. 246. Accordingly, just as Iran's direct assertion of its ownership of the antiquities would create a duty that the holder either return the antiquities or contest ownership, *see* 31 C.F.R. §§ 535.215, 535.333, so too is this duty created when a judgment creditor asserts Iran's ownership under TRIA.

The regulations implementing Exec. Order 12,281 provide that a property interest is "contested," and therefore blocked, "only if the holder thereof reasonably believes that Iran does not have title or has only partial title to the asset" and that "such a belief may be considered reasonable only if it is based upon a bona fide opinion, in writing, of an attorney ... stating that Iran does not have title or has only partial title to the asset." *See* 31 C.F.R. § 535.333(c). The trustee process defendants argue that because they do not possess a written opinion of an attorney as required by 31 C.F.R. § 535.333(c), their belief that Iran does not own the antiquities is not "reasonable" and therefore the antiquities are "uncontested" assets that were unblocked by Exec. Order No. 12,-281. *See* 31 C.F.R. § 535.333(a).

The plaintiffs argue that the pleadings in this action suffice for such a written opinion. This argument is appealing because it prevents the oddity of the trustee process defendants arguing that they own the antiquities while at the same time arguing that their belief that they own the antiquities is not a reasonable one. However, it is apparent that by requiring a "bona fide opinion, in writing, of an attorney licensed to practice within the United States stating that Iran does not have title or has only partial title to the asset," the regulations require something more than pleadings in litigation which can, for example, include a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *See* Fed.R.Civ.P. 11(b)(2).

The plaintiffs make a more persuasive argument that the trustee process defendants cannot rely on their lack of a written opinion because it is their statutory duty under 31 C.F.R. § 535.333(c) to obtain one, and a party cannot profit from its own failure to perform a duty. *See e.g., Glus v.*

*Brooklyn Eastern. Dist. Terminal,* 359 U.S. 231, 232–233, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) ("To decide the case we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence this principle has been applied in many diverse classes of cases by both law and equity courts...."). I agree with the plaintiffs that a holder cannot rely on its own failure to obtain an opinion as a basis for asserting that Iran's interest is therefore uncontested so that the holder can keep the property exempt from levy.

Accordingly, the trustee process defendants motion for reconsideration (dkt. no. 72) is DENIED with respect to the status of the antiquities as blocked assets.

The motion for reconsideration (dkt. no. 72) is GRANTED with respect to the trustee process defendants' request that I certify my ruling for interlocutory appeal under 28 U.S.C. § 1292(b). The plaintiffs also request that, in addition to my ruling in this order regarding TRIA, that the rulings in my previous order, *see Rubin,* 456 F.Supp.2d at 231, 234, be certified for interlocutory appeal. I agree with the parties that the following issues each involve "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," such that an interlocutory appeal is therefore appropriate under 28 U.S.C. § 1292:

1. Whether property that is alleged to belong to Iran and sought to be attached under section 201 the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub.L. No. 107–297, 116 Stat. 2322 (Nov. 26, 2002) held in the United States by a party who asserts in litigation that the property does not belong to Iran, but does not have a "bona fide opinion, in writing, of an attorney licensed to practice within the United States stating that Iran does not have title or has only partial title to the asset" is a "blocked asset" under TRIA § 201 and 31 C.F.R. § 535.333.

2. Whether a foreign sovereign's immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1609, may only be asserted by that foreign sovereign.

3. Whether the "commercial use" exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610(a)(7), applies only when foreign sovereign itself has made commercial use of the property within the United States.

It is SO ORDERED.